DS132405

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF TEXAS

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2021 JUL 19  PM 1:34

DEPUTY CLERK_____ nwb

Joe Hunsinger
 Plaintiff Pro-Se'

Case No:

V.
HIGHLAND PARK INVESTMENT PARTNERS LLC.
MIRACULOUS INVESTMENTS LLC.
 Defendant

3:-21 CV 1658 -S

# COMPLAINT

## 1.0  PARTIES

1.1   Joe Hunsinger is a an individual citizen of Texas and a resident of this District.

1.2   Defendant HIGHLAND PARK INVESTMENT PARTNERS LLC. (Highland) is a domestic corporation with its principal place of business in the State of Texas at 17350 State Hwy 249, #220 #6819, Houston, Texas 77064.  Harris County.

1.3   Highland was created by James Saveion, its Managing Member.

1.4   Defendant can be served by their registered agent Legalinc. Corporate Services Inc. at 10601 Clarence Dr. #250, Frisco, Texas 75033.

1.5   Defendant MIRACULOUS INVESTMENTS LLC. (Miraculous) is a domestic corporation with its principal place of business in the State of Texas at 700 Lavaca #1400 PO Box 5782, Austin, Texas 78701.  Travis County.

1.6   Miraculous was created by James Saveion, its Managing Member.

1.7   Defendant can be served by their registered agent LegalCorp Solutions, LLC., at 3 Greenway Plaza, #1320, Houston, Texas 77046.

## 2.0  JURISDICTION AND VENUE

2.1    This court has personal specific jurisdiction pursuant to 28 USC Section 1331 and 47 USC Section 227.

2.2    Supplemental jurisdiction for Plaintiffs state law claims arise under 28 USC Section 1391(b)(2).

2.3    This Court has personal specific jurisdiction over Defendant because defendant made calls to Plaintiff in this District.

## 3.0  PRELIMINARY STATEMENT

3.1    This is an action for damages brought by an individual consumer for violations of the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive and nuisance telemarketing practices.

3.2    Senator Hollings, the TCPA's sponsor, described these call as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of be; they hound us until we want to rip the telephone out of the wall."

3.3    According to findings by the FCC, the agency congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.

3.4    The national DNC registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  Plaintiff requested a copy of Defendants DNC Policy.

3.5   The TCPA regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

3.6   Telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services.

3.7   Neither the TCPA nor its implementing regulations require an explicit mention of a good, product, or service – where the implication of an improper purpose is "clear from the context."

3.8   In other words, "offers that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.

3.9   If a call is not deemed telemarketing, a Defendant must nevertheless demonstrate that it obtained the Plaintiffs prior express consent.

3.10  The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages.

3.11  "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."

3.12  Plaintiff has been harmed by Defendants' acts because his privacy has been violated.  Plaintiff was subject to annoying and harassing telephone calls (texts) that constitute a nuisance.

3.13  Telemarketers must obey the prohibitions in the TCPA.

3.14  Telemarketing is defined as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or charitable contribution

by use of one or more telephones and which involves more than one interstate telephone call.

3.15  Plaintiff establishes injury in fact, if he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

3.16  Plaintiff has the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.

3.17  Plaintiffs "express consent" is not an element of Plaintiffs prima facie case, but is an affirmative defense for which the Defendant bears the burden of proof.

3.18  One single unsolicited marketing text or call is all it takes for a Plaintiff to have standing and bring suit against a violator of the TCPA.

3.19  The TCPA does not bar all business-related text messaging, but instead, focuses, in part, on cellular calls and text messages that are for the purpose of soliciting new or additional business.

3.20  Defendants actions are a pattern and practice over time.

3.21  Defendants, in its alleged violation, was aware of the conduct and allowed it to continue.

3.22  The impersonal and generic nature of Defendants text message(s), demonstrate that Defendant utilized an ATDS in transmitting the message.

3.23  The text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.

3.24  Plaintiff has alleged facts sufficient to infer text messages were sent using ATDS – use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS.

3.25  Defendant used a "long code" to transmit a text to the Plaintiff.  A long code is a standard 10-digit phone number that enabled Defendant to send SMS text messages en masse, while deceiving recipients into believing that the message was personalized.  Defendant can copy and past and send hundreds of characters out with a few clicks.

3.26  Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to an from the mobile phone networks SMS centers which are responsible for relaying those messages to the intended mobile phone.  This allows for the transmission of a large number of SMS messages to and from a long code.

3.27  Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the call/text messages at issue in this case.  The systems utilized by Defendant have the capacity of store telephone numbers  and to dial such number from a list.

3.28  Defendants unsolicited calls/text message(s) caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendants text messages also inconvenienced Plaintiff and caused disruption of his daily life.

3.29  Unwanted "Robocalls" are the number one complaint in America today. Americans received 45 billion robocalls just last year in 2020.

3.30  Plaintiff estimates he has received tens of thousands of unauthorized and unwanted text messages in his lifetime from telemarketers.  Some have been from repeat violators and some have been from single call/text violators.  The Bureau of Labor Statistics tells us there are 134,800 telemarketers in the USA.  If

this information is correct American consumers could quite possibly receive 369.31 calls per day and we have to tell the telemarketers is to place us on their do not call list and we won't hear from them in another 12 months, and then process begins all over again?  Plaintiff does not want to have his phone ring or text 369.31 times a day from telemarketers.  Plaintiff does not even want one telemarketer to call him.  There is a reason they say we as a nation may disagree on many issues, but when it comes to unwanted telemarketing (Robocalls/texts) we all agree that we do not like them.

3.31  The contempt from Senator Hollings was he even wanted to do away with all telemarketers, period.  Plaintiffs pleading as mentioned above are clear and give an insight on where Plaintiff set of mind.  How he wants to left alone and unbothered by telemarketing calls/texts.

3.32  The do not call provisions of the TCPA cover any plan, program or campaign to sell goods or services through interstate phone calls. This includes calls by telemarketers who solicit consumers, often on behalf of third party sellers.

3.33  The TCPA has a "safe harbor" for inadvertent mistakes.  If a telemarketer can show that, as part of its routine business practice, it meets all the requirements of the safe harbor, it will not be subject to civil penalties or sanctions for mistakenly calling a consumer who has asked for no more calls, or for calling a person on the registry of the DNC list.

3.34 Plaintiffs complaint seeks money damages and injunctive relief from Defendants illegal conduct.

3.35 This private cause of action is a straight forward provision designed to achieve a straightforward result.  Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights.  Violations of the law are clear, as is the remedy.

3.36  The TCPA was enacted to prevent companies like Defendant from invading Plaintiffs' privacy as explained in paragraph 3.27 and 3.28.

3.37  Defendant(s) uses telemarketing to obtain new customers.

3.38  If Defendant(s) want to avoid a TCPA lawsuit, all they have to do is not break the laws of the TCPA.

## 4.0  VICARIOUS LIABILITY

4.1    At all times relevant the the events giving rise to this lawsuit, Defendant acted through its agents and is therefore liable for such actions pursuant of vicarious liability principles.

4.2    Whenever it is stated herein that Defendant engaged in any act or omission, the statement includes the acts or omissions by Defendant, its agents, its employees, its representatives and others with actual or apparent authority to act on behalf of and bind the Defendant.

## 5.0  QUESTIONS OF LAW

5.1    There are well defined and nearly identical questions of law and fact that affect all parties.  Such common questions of law and fact include, but are not limited to, the folllowing:

5.2    Whether Defendant(s) placed such telephone calls to the Plaintiff;

5.3    Whether Defendant(s) TCPA violations and conduct was knowing and/or willful:

5.4    Whether Defendant(s) can meet their burden of showing that they clearly and unmistakably obtained "prior express consent" to make such  calls/texts to the Plaintiff;

5.5    Whether Defendant(s) are liable for damages to the Plaintiff, as well as the amount to of such damages;

5.6    Whether Defendant(s) identified themselves to the Plaintiff or if their agents identified the entity on whose behalf the call/text was being made;

5.7    Whether Defendant(s) sent Plaintiff their DNC policy when it was requested;

5.8    Whether Defendant(s) uses telemarketing to obtain new customers;

5.9    Whether Defendant(s) have a written DNC policy;

5.10  Whether Defendant(s) written DNC policy was shared with anyone "on demand.";

5.11  Whether Defendant(s) can prove they trained their employees about the telemarketing rules and laws set in place;

5.12  Whether Defendant(s) have maintained a list of persons that they may not contact;

5.13  Whether Defendant(s) have a process in place to prevent phone calls to either numbers on the National Do Not Call List or numbers on the telemarketers internal do not call list;

5.14  Whether Defendant(s) have a process in place to monitor calls to prevent violations of the do not call list;

5.15  Whether Defendant(s) have maintained an errant list of all call that violate the do not call regulations;

5.16  Whether Defendant(s) can prove they used TCPA compliant vendors;

5.17  Whether Plaintiff opted out of receiving calls/texts from Defendant.

5.18  Whether Defendant(s) honored Plaintiffs opt out/stop request.

5.19  Whether Defendant(s) had reason to know, or should have known that its conduct would violate the statute.

5.20  Whether Plaintiff is entitled to injunctive relief;
5.21  Whether Defendant(s) should be enjoined from engaging in such mentioned conduct in the future;

5.22  Common questions in this case have common answers.

5.23  Whether Defendants had control over the agency making the calls.

## 6.0   FACTUAL ALLEGATIONS
## HIGHLAND PARK INVESTMENT PARTNERS LLC.
## and MIRACULOUS INVESTMENTS LLC.

6.1    On Saturday, July 10-2021 at 1:53 PM Plaintiff received **one** missed phone call from 972-945-0501 to his cellular phone number ending in 8146.

6.2    On Saturday, July 10-2021 at 4:04 PM Plaintiff received and answered **one** phone call from 972-945-0501 to his cellular phone number ending in 8146.  After a couple of tones (kinda sounded like a beep) and after more than 5 seconds a woman with a far away sounding voice came online. The telemarketer did not identify herself, but she wanted to buy real property from the Plaintiff.

6.3    Plaintiff, wanting to investigate his claim against the telemarketer, followed the telemarketers cues about the call.  Plaintiff gave his email to the caller.

6.4    The telemarketer told Plaintiff he would receive a call from the investor (the buyer).

6.5    On Saturday, July 10-2021 at 5:29 PM Plaintiff received and answered **one** phone call from 972-945-1843 to his cellular phone number ending in 8146.  A telemarketer did not identify herself again, but she wanted to go over the terms of the previous caller.  When Plaintiff asked who it was that was calling, he was told and "investor".  She told Plaintiff he would receive an email with an offer to buy his property.   .

6.6    Plaintiff received an email from Defendant which identified the call to be coming from named Defendants.   The email Plaintiff receibved came from offers@highlandparkinvestment.com.  It was from Both Defendants.



6.33



← 🔒 **Review and sig…**
na3.docusign.net
 ⋮

This site uses cookies, some of which are
required for the operation of the site.

☰

OPPORTUNITY

**1. PARTIES:** The parties to this contract are

Hunsinger Ruth

(Seller) and | Miraculous Investments LLC  (Buyer).
HIGHLAND PARK
INVESTMENT PARTNERS
LLC

Seller agrees to sell and convey to
Buyer and Buyer agrees to buy from
Seller the Property defined

below.

**2. PROPERTY:** The land, improvements and
accessories are collectively referred to as the
Property (Property).

A. LAND: Lot



6.8    After Plaintiff aquired the identify of the caller, Plaintiff blew off the caller.

## 7.0 CONTINUED FACTUAL ALLEGATIONS

7.01  Plaintiff searched the Pacer.gov website, and paid their search fees, and could not find any previous TCPA violations against the Defendant.

7.02  Plaintiff searched the Texas Secretary of State (SOS) website, and paid their search fees, and found Defendants to be a domestic corporation in the State of Texas.

7.03  Defendant never identified themselves, that is their true and legal identity, to the Plaintiff over the telephone at the time of the call in question in this Complaint.

7.04  The acts and or omissions of Defendant and the other Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently about absent bona fied error, lawful right, legal defense, legal justification, or legal excuse.

7.05  Part of Plaintiffs discovery will will be finding out if Defendant has a company wide pattern or practice of engaging in the alleged illegal practices at issue in my case.  Plaintiff is proffering that a number of similar incidents have occurred around the country to other everyday people.

7.06 Plaintiff has been hounded by these unwanted and illegal telemarketing calls/texts.  Defendant **Miraculous** had a website where they claim to have been selling an average of one or more properties per month.  One of their FaceBook video testimonies show a woman explaining how happy she was to be contacted by Defendant Miraculous.  That is great if her number was not registered on the DNC Registry, but what about the other phone calls they made to the other property owners.

7.07   Defendants are directly liable for the telemarketing calls made on their behalf because they actively participated in those calls.

7.08 Defendants make a profit from the scheme, which is entirely and mostly based on breaking the law by constantly harassing and robocalling everyday people, especially including people listed on the DNC list.

7.09 This is what happened and what I am going to tell you I have read it in many other Complaints.  A telemarketing call comes in and they transfer the call to someone else.  They always do this.

7.10   Defendants have placed someone to make the unwanted robocall and telemarketing calls, then the call is placed to Defendant so that all the Defendants can profit from their illegal calls.

7.11   The call placed by the Defendant  was not necessitated by an emergency.

7.12   The FCC has instruct that sellers such as Defendants may not avoid Liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without effective remedy for telemarketing intrusions.   This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separarately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a

few of them is unlikely to make a substantive difference for consumers privacy."

May 2013 FCC Ruling. 28 FCC Red at 6588(Paragraph 37) (internal citations omitted).

7.13  In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. id. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 USC Section 227(b).

7.14  The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  See in re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Red 12391, 12397 (Paragraph 13)(1995).

7.15  Defendant, or some unnamed entity working on Defendants behalf, made the  autodialed calls described in this Complaint "on behalf of" Defendants withing the meaning of the FCC's Declaratory Rulings and 47 USC Section 227(c)(5).

7.16  On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contacts out is telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of ...section 227(b) that are committed by third-party telemarketers"  See In re Joint Petition filed by Dish Network, LLC., et al, for Declaratory Ruling Concerning the TCPA Rules, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Red 6574, 6574 (paragraph 1)(May 9, 2013)("May 2013 FCC Ruling").

7.17  More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has

aparent (if not actual) authority" to make the calls.   28 FCC Red at 6586 (paragraph 34).

7.18   People are frustrated and saying all kinds of things, some are cordial and some are not.   Mostly it is the same kind of thing you hear someone saying to a fire ant.

7.19 The FCC has repeatedly rejected a narrow view of the TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing cal, id at 6587 n. 107.

7.20 The may 2013 Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller alows the outside sales entity access to information and systems that normally would be within the Sellers's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information.  The ability by the outside sales entity to enter consumer information into the seller's sales or customer system, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant.  It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer ti cease that conduct.

28 FCC Red at 6592 (paragraph 46).

7.21  From this date forward all the Defendant mentioned cannot squeal like a fat pig that got caught in the backyard garden claiming all the ridiculous responses they claim in a motion to dismiss.

7.22 Defendants were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.23  Put yourself in Defendants shoes, for example and I am going to go out on a creative limb here, you agree to contract work with and make some money with Unlucky Pinto Dog the auto warranty telemarketer.  Business is booming and you want to cover your rear end (and your legally supposed to... see paragraph  7.22 and 7.25).  Early one morning you do an online search of Unlucky Pinto Dog the auto warranty telemarketer and you find ~~hundreds~~, no, Thousands of negative reviews all across the country and from all the BBB from all the cities in all 50 states.  1. Do you sit back in your chair and sip your hot custom made cappuccino and think ahhh. I will just let it ride and do what Ford did with the Pinto (it was cheaper to pay out million is claims were people burned alive than to do a recall and fix the problem). 2. Or do call up Unlucky Pinto Dog and say "hay bro, I don't like what I am seeing...dude I didn't know you were gonna do all this...do you know what would happen if instead of complaining online, if thousands, tens of thousands, hundreds of thousands of people just went to the Federal court and grabbed a piece of paper and wrote their Complaint on it, they will be heard...from now on I can't have nothing to do with you bro".

7.24  Or, hey a class action will sink my business and me personally.  This has to stop.  This is worse than fireants.

7.25  Defendant were legally responsible for ensuring that their vendors complied with the TCPA, even if Defendants did not themselves make the calls.

7.26 Defendants knew (or reasonably should have known) that their vendors were violating the TCPA on their behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

7.27 Defendants calls were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

7.28 Defendant and/or their agents failed to properly identify themselves as required by the TCPA.

7.29 Plaintiff is not a customer of Defendant and has not provided defendant with his personal information or telephone number, or sought out solicitation from the Defendant or their agents.

7.30 It is Defendants burden to prove they has "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system."

7.31 At no time did Plaintiff provide prior express written consent, or even prior permission, for the Defendant or their agents to call the Plaintiff.

7.32 Plaintiff does not have and has never had an established business relationship with the Defendant.

7.33 The call received by the Plaintiff from the Defendant or their agent was for the purpose of encouraging the purchase of rental of, or investment in, property, goods, or services. The call therefor qualifies as telemarketing.

7.34 Plaintiff is the subscriber of phone number ending in 8146 and is financially responsible for phone service to said number.

7.35 Plaintiff's phone number ending in 8146 is primarily used for personal, family, and household use.

7.36 Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

7.37 Upon information and belief, Defendants calls harmed Plaintiff by intruding upon Plaintiffs seclusion.

7.38 As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA. This is for each and every violation, whether Defendants committed multiple violations with a single phone call.

## 8.0 STANDING

8.01 Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.

8.02 Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.

8.03 For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. In Plaintiffs case, Defendant transmitted a call to Plaintiff's cellular telephone, using an ATDS. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

8.04 For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." In Plaintiffs case, Defendant invaded Plaintiffs privacy and peace by calling his cellular telephone, and did this with the use of an ATDS. Furthermore, Plaintiff was distracted and annoyed by having to take time answering the phone call from Defendants agent and jump through

hoops to get their identity. All of these injuries are particularized and specific to Plaintiff.

8.05 Plaintiffs case passes The " Traceable to the Conduct of Defendant" Prong.

8.06 The second prong to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant. The above call was directly and explicitly linked to Defendant. The number from which the call was sent belongs to Defendant. This call is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

8.07 Plaintiffs case passes the " Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong,

8.08 The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion In the present case, Plaintiff's Conclusion include a request for damages for each call transmitted by Defendant, as authorized by statute in 47 USC. Section 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

8.09 Plaintiff, under his 14 Amendment rights, has right to bring this action to be heard in front of a jury.

8.10 Because all standing requirements of Article III of the US Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## **COUNT 1**

11.01 Plaintiff re-alleges and incorporates the above paragraphs.

11.02 Defendants violated 47 USC Section 227(b)(1)(A)(iii) by placing (non emergency) solicitation calls to the Plaintiff.

11.03    Defendants each must pay Plaintiff $500 for each call placed to Plaintiff.

## COUNT 2

12.01    Plaintiff re-alleges and incorporates the above paragraphs.

12.02    Defendants transmitted more than **three** solicitation call to Plaintiffs cellular phone number, which was registered on the Do Not Call registry, violating 47 CFR Section 64.1200(c).

12.03    Defendants each must pay Plaintiff $500 for each call placed to Plaintiff.

## COUNT 3

13.01    Plaintiff re-alleges and incorporates the above paragraphs.

13.02    Defendants knew or should have know that Plaintiff had not given express consent to receive its calls violating USC Section 227(b)(3)(C).

13.03    Each Defendant must pay Plaintiff $500.

## COUNT 4

14.01    Plaintiff re-alleges and incorporates the above paragraphs.

14.02    Defendant transmitted  calls to the Plaintiff, despite the fact that Plaintiffs phone number is listed on the DNC list, a violation of USC Section 227(c).

14.03    Each Defendant must pay Plaintiff $500.

## COUNT 5

15.01      Plaintiff re-alleges and incorporates the above paragraphs.

15.02      Defendant transmitted <u>more than one call</u> to the Plaintiff, a violation of USC Section 227(c)(5)(B).

15.03      Defendant must pay Plaintiff $500 for each call placed to the Plaintiff.

## ~~COUNT 6~~

~~16.01      Plaintiff re-alleges and incorporates the above paragraphs.~~

~~16.02      Defendant spoofed their caller id. The phone numbers on displayed on Plaintiffs caller id were long codes. Plaintiff cannot call Defendants long code and speak to someone. A violation of 47 CFR Section 64.1601(4)(e).~~

~~16.03      Defendant failed to provide a call back number in the initial call transmitted to Plaintiff. A violation of 47 CFR Section 64.1200(b)(2).~~

~~16.04      Defendant must pay Plaintiff $50~~0.

## COUNT 7

17.01      Plaintiff re-alleges and incorporates the above paragraphs.

17.02      Defendant made calls to Plaintiffs phone ending in 8146 intentionally or knowingly and the calls were not accidental.

17.03      Pursuant to TBCC Section 305.053, Plaintiff sues here for monetary damages.

17.4      Pursuant USC Section 227(c)(5) and 47 CFR Section 64.1200(a)(2), treble the $500 statutory damages to be recoverable by Plaintiff against the

Defendant to $1500 for each transmitted call Defendant placed and for violating the the DNC request.

17.05    Defendant must pay Plaintiff $1500 for each violation and call transmitted to Plaintiff.

## COUNT 8

18.01    Plaintiff re-alleges and incorporates the above paragraphs.

18.02    Pursuant to 47 USC Section 227(b)(3)(A) and TBCC Section 305.053, the court following the trial of this action should issue an order permanently enjoining Defendant and its agents from engaging in any further conduct with respect to Plaintiff which violates the rules and regulations of 47 USC Section 227.

## COUNT 9

19.01    Plaintiff re-alleges and incorporates the above paragraphs.

19.02    Defendant intentionally intruded on Plaintiffs solitude, seclusion, and private affairs by transmitting unwanted telemarketing calls to his cellular phone. Defendants intrusion would be highly offensive to a reasonable person.

19.03    The repeated autodialed calls to Plaintiffs cellular phone have caused him emotional harm and distress, frustration, aggravation, wasted time, a nuisance and other losses.

19.04    Plaintiff seeks to recover actual damages, including his damages for mental anguish, to be proven at trial.  Mental anguish is one of the torts for which Plaintiff can recover mental-anguish damages without proving physical injury.

## TRIAL BY JURY

20.01    Plaintiff demands a trial by jury under the 7th Amendment of the US Constitution.

## **CONCLUSION**

Plaintiff has read Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n which pretty much establishes the conduct for attorneys and references abusive litigation tactics from attorneys conduct.  Plaintiff believes if Defendant would read Dondi and instruct their attorney to send copies of the filings and emails between the Plaintiff and Defendants attorney, this would inform the Defendant on what the real world is like with respect to attorneys and their legal actions and it might keep Defendants attorney from "poking a stick at Plaintiffs ribs" just to upset him and try to prolong the hours he will be charging his client.

Plaintiff requests everything he has asked for in his Complaint and other relief as the Court deems necessary.

Joe Hunsinger – Pro se
7216 CF Hawn Frwy.
Dallas, Texas 75217
214-682-7677
joe75217@gmail.com

3:03  ◀ ▬    ▼ ▮▮▮ 92% ▮

← 🗑



## Scam Likely (2)

972-945-0501

**Create contact**     **Update contact**

📞 Jul 10 (Sat) 4:04 PM
Scam Likely
Texas

📞 Jul 10 (Sat) 1:53 PM 🄷🄳
Scam Likely
Texas

◁   ○   ▢



**+1 972-945-1843**

Create contact        Update contact

Jul 10 (Sat) 5:29 PM
Texas

 **Gmail**

Joe Hunsinger <casa75217@gmail.com>

---

## National Do Not Call Registry - Your Registration Is Confirmed

**Verify@donotcall.gov** <Verify@donotcall.gov>                     Mon, Apr 12, 2021 at 8:06 AM
To: casa75217@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 8146 on September 11, 2014. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

**********************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

JS 44 (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOE HUNSINGER

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

HIGHLAND PARK INVESTMENT PARTNERS LLC. etal

County of Residence of First Listed Defendant   HARRIS
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **Other:** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
USC 227

Brief description of cause:
ILLEGAL TELEMARKETING CALLS

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
1-12-2021

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____